UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| JJ PLANK COMPANY, LLC AND XERIUM TECHNOLOGIES, INC., Plaintiffs | CIVIL ACTION NO. 3:18-CV-00798 |
| VERSUS | JUDGE DOUGHTY |
| GARY BOWMAN, Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

## MEMORANDUM ORDER

Before the Court is an Expedited Motion to Compel Compliance with Expedited Discovery (Doc. 27) filed by Plaintiffs JJ Plank Company, LLC ("JJ Plank") and Xerium Technologies, Inc. ("Xerium") (collectively, "Plaintiffs"). The Motion seeks production of four categories of discovery: "(1) A workable mirror image of Bowman's Voith email custodial account (which would include deleted emails); (2) a mirror image of Bowman's work computer; (3) a mirror image of Bowman's company-issued smart phone; and (4) any documents Bowman has created or accessed in his several weeks of activity at Voith, including any hard-copy documents collected from Bowman's Voith office." (Doc. 27, p. 2). Defendant Gary Bowman ("Bowman") and Third Party Voith Paper Fabric Rolls Systems, Inc. ("FRS") oppose the Motion.

Plaintiffs' discovery requests, as initially written and as sought to be enforced through this Motion, exceed the permissible scope of discovery under Fed. R. Civ. P. 26(b). And because FRS has undertaken at least some production in response to Plaintiffs' subpoena pursuant to an informal agreement between the parties – albeit

not quickly enough for Plaintiffs' – the Motion is also, at least in part, premature. The Motion is therefore DENIED.

I. <u>Background</u>

As an initial matter, the parties dispute the scope of the Motion itself. FRS argues that the last three categories of discovery listed above were not expressly included in the subpoena (Doc. 27-2). That is correct. Plaintiffs maintain that the categories of discovery listed in the Motion would be responsive to the production required by the subpoena. But the categories call for production in excess of the production sought by the express terms of the subpoena. And only the latter terms may actually be enforced through the Motion. To the extent the Motion seeks production pursuant to terms not expressly included in the subpoena, the Motion is without foundation.

Instead, the Court will construe the categories of documents listed in the Motion to indicate the portions of the subpoena – or more literally, the items listed under "Request for Documents" in the subpoena – which are still outstanding and discoverable in Plaintiffs' view. Employing this construction, the Motion seeks production pursuant to items 2 and 3 under "Request for Documents":

> 2. A downloadable mirror image file of all emails (including sent, received, deleted, archived, calendars, etc.) in native format from the work email account belonging to Gary Bowman.
>
> 3. All documents that Bowman has created or accessed, or has brought or maintained at work at Voith, including communications with any third party customers, related to spreader rolls.

(Doc. 27-2, pp. 7-8).

As another initial matter, Bowman maintains – and effectively certifies through his opposition – that he does not have documents responsive to the subpoena, or the capability to produce files or images responsive to the Motion. Bowman correctly notes that Fed. R. Civ. P. 34(a)(1) only requires production of documents and things within a party's "possession, custody, or control." The Motion is therefore also meritless to the extent it seeks further production or response from Bowman.

Having resolved those preliminary issues, the Court turns to the basic principles implicated by the Motion. First, in issuing the subpoena, Plaintiffs were subject to the general duty to avoid imposing undue burden or expense upon FRS: "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). And any order by the Court must protect FRS, as a non-party, "from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii).

Second, the Court takes this discovery dispute as it finds it, which is pursuant to a motion to compel, not a motion to quash or modify the subpoena under Fed. R. Civ. P. 45, or a motion for protective order pursuant to Fed. R. Civ. P. 26(c). As such, the Court's determination must address whether the subpoena's requests conform to the proper parameters of discovery in this matter. Relevant to that determination, among other things, are the nature of this lawsuit, the position of the party from whom discovery is sought, and the objections of that party.

By nature, this litigation involves the alleged misappropriation of trade secrets. FRS's position is that of a non-party competitor of the party seeking discovery. And FRS has objected to both disputed document requests as overly broad, disproportionate to the needs of the case, and unrelated to any proffered identification of the allegedly misappropriated documents or trade secrets.

## II. Law and Analysis

Under Fed. R. Civ. P. 26(b)(1), [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." In evaluating the proportionality of a discovery request, the Court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." In implementing the 2015 amendment to Fed. R. Ci. P. 26, "[t]he court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Id. (advisory committee notes to the 2015 amendment).

This Court's case-specific determination must be guided by recent developments in trade secret jurisprudence. Those developments, and the policy considerations underlying them, were adeptly summarized by the court in Kalencom Corp. v. Shulman, CV 17-5453, 2018 WL 1806037, at *2 (E.D. La. Apr. 17, 2018). The basic premise was stated in this way: "[A] district court in Texas surveyed cases from

other circuits and concluded that '[t]he growing consensus seems to be in favor of requiring those plaintiffs bringing claims of trade secret misappropriation to identify, with reasonable particularity, the alleged trade secrets at issue.'" Id. (quoting StoneEagle Servs., Inc. v. Valentine, No. 3:12-CV-1687-P, 2013 WL 9554563, at *2 (N.D. Tex. June 5, 2013)).

The Kalencom court then catalogued a legion of cases joining this consensus in favor of "pre-discovery identification." And the court described one court's summary of the policy considerations prompting this trend:

> Policies favoring identification of allegedly misappropriated trade secrets prior to discovery include: "if discovery on the defendant's trade secrets were automatically permitted, lawsuits might regularly be filed as 'fishing expeditions' to discover the trade secrets of a competitor;" "until the trade secret plaintiff has identified the secrets at issue with some specificity, there is no way to know whether the information sought is relevant;" "it is difficult, if not impossible, for the defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated;" and "requiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that it will not mold its cause of action around the discovery it receives."

Kalencom Corp., 2018 WL 1806037, at *3 (quoting DeRubeis v. Witten Techs., Inc., 244 F.R.D. 676, 680-81 (N.D. Ga. 2007)). In its briefing, FRS also identified additional authorities supporting the trend of requiring pre-discovery identification of misappropriated trade secrets. See, e.g., United Servs. Auto. Ass'n v. Mitek Sys., Inc., 289 F.R.D. 244, 248 (W.D. Tex.2013), aff'd, CIV.A. SA-12-CA-282, 2013 WL 1867417 (W.D. Tex. Apr. 24, 2013) ("Pre–Discovery Identification also assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope; moreover, it provides defendants with an

equal playing field, allowing them ample time and opportunity to develop their defense rather than ambushing them on the eve of trial.") (internal citation and quotation omitted).

However, the Kalencom court also acknowledged the countervailing policy considerations many other courts have observed, including:

> plaintiff's broad right to discovery under the Federal Rules of Civil Procedure; the trade secret plaintiff, particularly if it is a company that has hundreds or thousands of trade secrets, may have no way of knowing what trade secrets have been misappropriated until it receives discovery on how the defendant is operating; and if the trade secret plaintiff is forced to identify the trade secrets at issue without knowing which of those secrets have been misappropriated, it is placed in somewhat of a 'Catch–22' ... '[i]f the list is too general, it will encompass material that the defendant will be able to show cannot be trade secret. If instead it is too specific, it may miss what the defendant is doing.

Kalencom Corp., 2018 WL 1806037 at *3 (quoting DeRubeis, 244 F.R.D. at 680) (internal citations and quotation omitted).

The balance of authorities seem to favor the former set of policy considerations. Thus, requiring pre-discovery identification seems to be the predominate trend. But while a strong consensus may be growing, a mandate has not arisen. This area of litigation is complex, contentious, and fact-intensive. Therefore, a mandate may long elude us. And perhaps it should. A district court in Ohio best summarized the resulting circumstances:

> The divergent rulings from various federal courts on the issue of whether to require prediscovery identification of trade secrets reinforces the idea that rulings on discovery limitations are a case-by-case decision where courts must use their broad discretion based heavily on the distinct circumstances of any particular action. In reaching a decision on the issue, a presiding court should balance a plaintiff's general right

6

> to broad relevant discovery with the special implications raised by a trade secret misappropriation claim.

A&P Tech., Inc. v. Lariviere, 1:17-CV-534, 2017 WL 6606961, at *8 (S.D. Ohio Dec. 27, 2017).

In this case, the Court need not reach a categorical determination regarding whether, in all cases or even in this one, pre-discovery identification is warranted. On the record presently before the Court, such a determination would be difficult and potentially prejudicial. Instead, the Court decides only what it can, and should, at this point: whether the disputed requests are within the proper scope of discovery as we can presently conceive it. Because the two disputed discovery requests in the subpoena are effectively boundless, the Court finds the Motion should not be granted.

The first request seeks, to paraphrase, all of Bowman's emails from his FRS work account. Theoretically, this request may result in the production of communications and attachments, innocuous and otherwise, which have no arguable connection to any misappropriation. Such communications could include FRS trade secrets and other information generated before Bowman's arrival at FRS in May 2018, or even before his alleged "discussions" with FRS began in January 2018. By its terms, the request calls for the production of documents which exceed any discernable discovery scope in this case.

The second request seeks production of "[a]ll documents that Bowman has created or accessed, or has brought or maintained at work at Voith, including communications with any third party customers, related to spreader rolls." (Doc. 27-2, p. 8). Given the broad misappropriation claim here, some documents responsive to

7

this request could be relevant, if not admissible. But the only limitation contained in the request – documents "related to spreader rolls" – is inadequate as written. This is particularly so when the limitation is coupled with references to all documents Bowman "maintained" or even "accessed" at FSR. Such documents could again, at least theoretically, include confidential trade secrets which predated Bowman's employment at FSR or which are otherwise not discoverable.

Thus, the Court finds that the requests fall outside the scope of permissible discovery under Fed. R. Civ. P. 26(b)(1). The Court may well reach this determination regarding the two disputed requests in a case of any nature. But the conclusion is substantially reinforced by the fact that this lawsuit pertains to alleged misappropriation of trade secrets. Without deciding the issue – which again is, at this stage, unnecessary and possibly improper – the Court observes that the policy considerations favoring pre-discovery identification are certainly in play here. Those considerations – even to the extent they are countervailed by other policy arguments – warrant caution in setting the contours of discovery here. As held above, the disputed requests simply lack any meaningful contours. And the Court "cannot condone far reaching discovery in a lawsuit by a plaintiff who is unable to identify the confidential information that has allegedly been misappropriated." Kalencom, 2018 WL 1806037, at *4.

The Court also finds the Motion premature. Plaintiffs apparently agreed to informally limit the scope of their request to work-related emails pertaining to "spreader rolls." Of course, that limitation is not before the Court. But FRS purports

8

to have completed a review of Bowman's emails, and to have determined that none "attaches or includes a document or file that belongs to Plaintiffs." (Doc. 33, p. 3). FRS is further designating and producing documents subject to a Protective Order (Doc. 16). The production may satisfy some, if not most or all, of Plaintiffs' concerns.[1]

Plaintiffs additionally maintain that "[t]here is no mystery to the trade secrets at issue," and that the secrets have been set forth in the Complaint and in discovery responses. (Doc. 37, p. 3). Plaintiffs then devote approximately five pages to a recitation of alleged trade secrets.

This response is insufficient for several reasons. First, the Court is not aware of any focused listing of trade secrets which serve to limit its discovery requests. Plaintiffs appear to have amassed this listing from several different sources. The Court cannot be assured that FRS had access to the sources prior to receiving Plaintiffs' reply brief in support of its motion to compel, or understood these sources to be limitations at all. Second, to provide such a listing in a reply brief necessarily deprives FRS of the opportunity to evaluate and, if warranted, oppose Plaintiffs' proposals. It is for this reason that the record is, at present, inadequate for the Court to make a determination regarding the issue of pre-discovery identification.

---

[1] Plaintiffs dispute the timing of FRS's production because a preliminary injunction has been set before the District Judge for July 23, 2018. But that timing cannot alter the Court's decision on Plaintiffs' Motion to Compel.

Plaintiffs initially sought production by June 25, 2018. (Doc. 27-2, p. 3). That initial delay would have been subject to quashal as unreasonable. Further, FRS is entitled to an opportunity to object, designate documents, and otherwise safeguard its commercial and legal interests to the extent allowed by law. Meanwhile, the undersigned has heard and decided Plaintiffs' motion as soon as practicable.

If Plaintiffs feel that some additional production may impact their arguments at the preliminary injunction hearing, Plaintiffs may request a continuance from the District Judge, or may argue to the District Judge at the hearing what any unproduced documents may have contributed to the proceeding. But for purposes of this Motion, FRS's failure to respond to Plaintiffs' satisfaction up to this point has not been unreasonable.

9

What the Court does observe, however, is that Plaintiffs' listing appears to include the full extent of Bowman's knowledge about trade secrets or proprietary information regarding spreader rolls. Of course, that listing says nothing about what Plaintiffs maintain Bowman may have *actually misappropriated*. But even assuming Plaintiffs should not be required to specifically identify Bowman's alleged misappropriations with that level of specificity, the listing itself may be beyond the scope of discovery. It may contain information which is, for instance, generally known to the public and otherwise not information which could be characterized as a trade secret. Plaintiffs' recitation in its brief does not address that type of question.

As such, Plaintiffs' arguments tread dangerously near one of the principal policy considerations noted by other courts requiring pre-discovery identification: the concern that Plaintiffs may be seeking to mold their claims around the discovery they receive. True, Plaintiffs may be able to argue that, because of some circumstance involved in this case, discovery is necessary for them to precisely identify the misappropriation, or at least, the trade secrets that *may have been* misappropriated. That argument seems tenuous. This is not a case, for instance, involving "hundreds or thousands of trade secrets." Kalencom Corp., 2018 WL 1806037 at *3 (quoting DeRubeis, 244 F.R.D. at 680) (internal citations and quotation omitted). But in any event, to simply argue that Bowman had access to numerous identifiable trade secrets is inadequate to obtain the sweeping discovery sought in the subpoena.

After FRS's production, if Plaintiffs choose to seek additional discovery of this nature – whether they elect pre-discovery identification or not – Plaintiffs must do

10

more than they did in the subpoena to tether the requests to the scope of the alleged misappropriation. If the scope of the alleged misappropriation is, and remains, amorphous, Plaintiffs must justify that. And either way, Plaintiffs must afford FRS the opportunity to respond before filing a motion to compel.

These directives are particularly reasonable here where, despite the speed of this litigation, critical investigative and discovery steps have already occurred. Those steps may distinguish this case from others of its kind in which pre-discovery identification has not been required. Depositions have been taken. Forensic examinations have been conducted. And limited document production has occurred. These circumstances make requiring Plaintiffs to narrow the scope of their requests with some particularity – at least before filing and winning a motion to compel – even more reasonable.

Finally, Plaintiffs seem to argue that overbroad production is warranted because the Protective Order is in place. However, the mere presence of a protective order does not automatically sanitize an overbroad discovery request, and does not alleviate all legitimate concerns associated with producing trade secrets. See generally Insulate Am. v. Masco Corp., 227 F.R.D. 427, 434 (W.D.N.C. 2005). Again, this conclusion is especially important as to a non-party to a competitor, and even if material may be designated for "counsel's eyes only." Nonetheless, the Protective Order itself states that it does not require the production of documents "beyond the permissible scope of discovery." (Doc. 16, p. 17). Again, regardless of the effect of the Protective Order, the document requests exceed that permissible scope.

### III. Conclusion

For the foregoing reasons, Plaintiffs' Motion to Expedite (Doc. 27) is GRANTED, but the Motion to Compel Compliance with Expedited Discovery (Doc. 27) is DENIED.

THUS DONE AND SIGNED in Alexandria, Louisiana, this 23rd day of July, 2018.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE