UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

JJ PLANK COMPANY, LLC, AND            CIVIL ACTION NO. 18-798
XERIUM TECHNOLOGIES, INC.

VERSUS                                JUDGE TERRY A. DOUGHTY

GARY BOWMAN                           MAG. JUDGE PEREZ-MONTES

DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF EXPEDITED
MOTION TO DISSOLVE OR, ALTERNATIVELY, TO PARTIALLY DISSOLVE
THE JUNE 15, 2018 TEMPORARY RESTRAINING ORDER

Plaintiffs' Opposition: (1) concedes that the Covenant Not to Compete provision in the

New Hire Agreement is unenforceable under Louisiana law, and therefore cannot be the basis of

paragraphs A, C, and D of the TRO; and (2) proves that Plaintiffs impermissibly sought and

obtained the injunctive relief in paragraphs A, C, and D based **solely** upon their claims of

misappropriation of trade secrets and confidential information.[1]  Plaintiffs' conduct in obtaining

injunctive relief on this basis is especially disconcerting now that **every single one of their**

**witnesses has confirmed in depositions that Plaintiffs have absolutely NO evidence that**

**Bowman took any trade secrets or confidential documents or files**, and Bowman has

provided sworn testimony that he did not do so.  However, even if Plaintiffs had undisputed

evidence of trade secret misappropriation, the cases cited in support of Bowman's motion to

dissolve establish that, without an enforceable non-compete agreement, such evidence is patently

insufficient to support injunctive relief that places **any** restrictions on an Bowman's ability to

---

[1]      *See* Rec. Doc. 42 at p. 4.  Plaintiffs' suggestion that Bowman's arguments misconstrue the claims
made in Plaintiffs' Complaint and that Plaintiffs did not seek the TRO based upon the Covenant Not to
Compete provision of the New Hire Agreement is entirely inconsistent with the allegations in Plaintiffs'
Complaint, which (a) quote the Covenant Not to Compete provision in full, (b) allege that Plaintiffs seek
to "enjoin and enforce" the non-compete provision, and (c) falsely represent to the Court that the

1

work for FRS or solicit Plaintiffs' customers, as a matter of law.[2]  Plaintiffs blatantly ignore the Louisiana cases cited in Bowman's memorandum and ask the Court to find that the relief they obtained in paragraphs A, C, and D is proper based on cases from courts in Illinois, Missouri, and Pennsylvania that apply the law of those states to the claims at issue. And, even worse, a review of these cases demonstrates that the Plaintiffs' descriptions of them are outright inaccurate.

**Plaintiffs fail to cite a single case that enjoins a Louisiana employee from working or soliciting customers in the absence of a valid and enforceable non-compete agreement that meets the requirements of La. Rev. Stat. 23:921**.  In short, Plaintiffs cannot satisfy the required element of proving a substantial likelihood of success on the merits because the relief they obtained in paragraphs A, C, and D of the TRO is not recognized by the law applicable to their claims.[3]  Paragraphs A, C, and D of the TRO are subject to dissolution on these grounds.

---

Agreement is "**fully** enforceable." *See* Plaintiffs' Complaint at pp. 20-21, Plaintiffs' Complaint at pp. 18-21, ¶¶  83, 84, 91, and 98.

[2]       *See* Bowman's Memorandum in Support of his Motion to Dissolve (Rec. Doc. 19) at pp. 6-12 and cases cited therein.

[3]       Plaintiffs misstate the standard for injunctive relief when they suggest to the Court that to "obtain a temporary restraining order, *in particular*, the movant must allege facts in the verified complaint that clearly shows immediate and irreparable loss or damage...The court treats the well-pleaded allegation of a verified complaint as true." Rec. Doc. 42 at p. 1. (*citing In Re Fuselier*, 2010 WL 23179, at *1 (Bankr. E.D. La., Jan. 13 2010)).  The *Fuselier* case is inapposite because it addresses the sufficiency of a verified complaint in the context of a motion for default judgment, **not** a request for injunctive relief. Additionally, Plaintiffs' apparent suggestion that a showing of irreparable injury is independently sufficient to obtain injunctive relief is contradicted by Fifth Circuit authority demonstrating that a Plaintiff must demonstrate **all four prerequisites** to prevail on a claim for the extraordinary relief of a temporary restraining order or preliminary injunction, including the requirement of showing a substantial likelihood of success that they will prevail on the merits of their claims.  *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir.2003); *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir.1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974) (en banc ).  Otherwise stated, if a party fails to meet **any of the four requirements,** the court cannot grant the temporary restraining order or preliminary injunction. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618 (5th Cir.1985); *Clark*, 812 F.2d at 993.  **In fact, the "absence of likelihood of success on the merits" is sufficient to make the district court's grant of injunctive relief "improvident as a matter of law."** *Tex. Med. Providers v. Lakey*, 667 F. 3d 570, at 574 (5th Cir. 2012)

Likewise, Plaintiffs' argument that they failed to provide notice of the TRO to Bowman simply because they believed their case presented "an emergency" completely misses the mark. Plaintiffs were required to show more than just "an emergency" to seek an *ex parte* TRO without notice to Bowman.   Specifically, Plaintiffs were required to show that "immediate and irreparable injury, loss, or damage [**would] result before** [Bowman] could be heard in opposition."   Fed. R. Civ. P. 65(b)(1)(emphasis added).   The pages of argument in Plaintiffs' Opposition cannot get around the inexcusable fact that Plaintiffs were in communication with counsel for Bowman's employer, who could have easily gotten notice to Bowman, yet they failed to provide any notice until after the TRO was granted.   All of these deficiencies are addressed in more detail below.

1. **Plaintiffs cannot circumvent the fact that Louisiana courts have repeatedly rejected even proven claims of theft of trade secrets and confidential information as a basis for enjoining an employee's freedom to work in any capacity for a competitor or solicit customers of a former employer.**

Plaintiffs' assertion that the injunctive relief granted in paragraphs A, C, and D of the TRO (enjoining Bowman from working for FRS in his current role and soliciting customers[4]) is proper based on allegations that he misappropriated trade secrets and confidential information – allegations that all of Plaintiffs' witnesses have conceded are false – is directly contrary to Louisiana law.   Courts that have granted injunctive relief for misappropriation of trade secrets under the Louisiana Uniform Trade Secrets Act ("LUTSA") have limited the injunction to a prohibition on the use or disclosure of trade secrets.[5] **Indeed, in a case where a defendant was**

---

[4] Plaintiffs are correct that the requirements of La. Rev. Stat. 23:921 do not apply to solicitation of employee agreements (see Rec. Doc. 42 at pp. 13-14); however, Plaintiffs have not even alleged that Bowman has solicited Plaintiffs' employees.   Thus, there is absolutely no basis to enjoin Bowman from engaging in such conduct.

[5] See, e.g., *Innovative Manpower Solutions, LLC v. Ironman Staffing*, LLC, 929 F. Supp. 2d 597, 612 (W.D. La. 2013) (stating that "only actual or threatened misappropriations may be enjoined" under LUTSA); *Wheelabrator Corp. v. Fogle*, 317 F. Supp. 633, 636 (W.D. La. 1970) (explaining that, even if

found to have actually engaged in "deliberate and calculated conduct" in taking his employer's confidential and trade secret information "with malice aforethought," the court held that "courts are effectively precluded by La. Rev. Stat. 23:921 from enjoining a defendant from working for a competitor or soliciting former clients because the job may entail the use of 'trade secrets....'" *NCH Corp. v. Broyles*, 563 F.Supp. 142, 145-46 (E.D. La. 1983) (Beers, J.).  Plaintiffs simply cannot escape this holding in the *Broyles* case, or the other cases cited in Bowman's original memorandum, which clearly establish that Plaintiffs cannot enjoin Bowman from competing to prevent him "from utilizing Plaintiffs' trade secrets for the benefit of his new employer," as they admittedly seek to do.[6]

Likewise, Plaintiffs' assertion that paragraph A of the TRO is proper because it prohibits Bowman from working for or with FRS "in relation to spreader rolls only" and from assisting FRS in developing a spreader roll repair facility is also inconsistent with (1) Louisiana law establishing that an employee like Bowman has both the "absolute right to enter the employment of another and actively compete with his former employee," and to "prepare to compete";[7] and (2) Plaintiffs' own demands after the TRO was entered that FRS instruct "Bowman to leave the premises of [FRS] immediately, and that Mr. Bowman not be in further communication with

---

information was a trade secret, an "injunction could be issued only on the basis of the possibility or probability of its use or disclosure"); *see also Newsouth Communs. Corp. v. Universal Tel. Co.*, No. 02-2722, 2002 U.S. Dist. LEXIS 18969 (E.D. La. Oct. 4, 2002) (enjoining only future use or disclosure of trade secrets); *Konecranes, Inc. v. Robaina*, No. 98-2997, 1998 U.S. Dist. LEXIS 18170, at *8-10 (E.D. La. Nov. 13, 1998) (enjoining former employee from using or disclosing trade secrets but denying preliminary injunction motion "with respect to all other requests.").

[6]     Rec. Doc. 42 at p. 8.  Plaintiffs accuse Bowman asserting the "ridiculous proposition" that an "employee cannot be enjoined [under Louisiana law] even if they steal trade secrets."  Rec. Doc. 45 at p. 11.  To be clear, Bowman does **not** contend that an employee cannot be enjoined under Louisiana law based on the misappropriation of trade secrets.  Rather, Louisiana law establishes that, in the absence of a non-compete agreement that complies with La. Rev. Stat. 23:921, any such injunctive relief must be limited to the a prohibition against the use or disclosure of trade secrets and cannot include relief that enjoins an employee from competing.  *See* note 5 *supra.*

[7]     *See Orkin Exterminating Co. v. Foti,* So. 2d 593, 596 (La. 1976); P*ure Air Daigle, LLC v. Stagg,* No. 16-CV-01322, 2017 WL 4158834, at *3 (W.D. La. Sept. 15, 2017).

[FRS] until further order."[8]  Plaintiffs' demands confirm that the representations they have made

to the Court in their Opposition are bogus, and that Plaintiffs view the TRO as a blanket

prohibition against Bowman's employment with FRS.

> 2. **Louisiana has specifically rejected the "inevitable disclosure" doctrine and, pursuant to its express terms, the DTSA does <u>not</u> preempt Louisiana law or provide an independent basis for the application of the "inevitable disclosure" doctrine.**

As Plaintiffs acknowledged in their original Opposition to Bowman's motion to dissolve,

[9] no Louisiana court has recognized the inevitable disclosure doctrine – a doctrine that allows an

employee to be enjoined from competing merely because their job will necessarily entail the use

of a former employer's trade secrets.  Moreover, Plaintiffs ignore that Louisiana has, like the vast

majority of other states,[10] outright rejected the inevitable disclosure doctrine.  *See Standard*

*Brands, Inc. v. Zumpe*, 264 F.Supp. 254 (E.D. La. 1967) (Rubin, J.) ("There can be little doubt

that Louisiana courts would in a proper case enjoin the **<u>disclosure</u>** of trade secrets in violation of

a fiduciary or contractual obligation to maintain their secrecy.  However, that does **not** mean that

Louisiana would sanction an injunction against working for a competitor because the new job

entails the possible disclosure of trade secrets.  **While it does not appear that <u>the disclosure of</u>**

---

[8]   *See* Rec. Doc. 8-3 at p. 2 (Plaintiffs' counsel's June 15, 2018 email notifying FRS's counsel of the TRO entered by the Court).

[9]   Plaintiffs withdrew their original opposition and replaced it with a "corrected" version that eliminated this acknowledgement of Louisiana law.  *Compare* footnote 4 of Plaintiffs' original opposition (Rec. Doc. 42) to footnotes 3 and 4 of Plaintiffs corrected memorandum (Rec. Doc. 45).  Plaintiffs' apparent attempt to hide the ball should persuade the Court to scrutinize the arguments that Plaintiffs are making in support of their claims.

[10]  *See, e.g., PrimePay LLC v. Barnes*, No. 14-CV-11838, 2015 WL 2405702, at * 25–26 (E.D. Mich. May 20, 2016) ("To read the MUTSA as preventing an employee who has been made privy to particular customer information in the course of his employment from ever using that knowledge when working for (or in this case becoming) a competitor would impose a *de facto* covenant not to compete which the employee had never agreed."); *see also Intl. Bus. Mach. Corp. v. Seagate Tech., Inc.*, 941 F. Supp. 98, 101 (D. Minn. 1992) (quotation and citation omitted) ("However, in the absence of a covenant not to compete or a finding of actual or an intent to disclose trade secrets, employees may pursue their chosen field of endeavor in direct competition with their prior employer.  **Merely possessing trade secrets and holding a comparable position with a competitor does not justify an injunction.**") (emphasis added).

**confidential information by [defendant] <u>will inevitably result</u> from his employment by [a competitor], <u>even if this were the consequence no remedy could be afforded</u>.**") (emphasis added)).

Further, contrary to Plaintiffs' representations to the Court, the Defend Trade Secrets Act ("DTSA") does **not** provide an independent basis for application of the "inevitable disclosure" doctrine.  Plaintiffs' contention that "courts across the country have found that the DTSA (as opposed to state trade secret claims) recognizes inevitable disclosure as a basis to enjoin a departing employee" is **not**  supported by a single case that they have cited.[11]  *See  Panera, LLC v. Nettles*, 2016 WL 4124114 (E.D. Mo. Aug. 3, 2016) (where the court finds that neither its state nor federal courts have recognized the inevitable disclosure doctrine, but uses the doctrine to provide further support for its decision to enforce <u>an otherwise valid and enforceable non-competition agreement</u>:  "Because of Nettles' executive position and knowledge of business strategy and because of the apparent competitive relationship between the two companies, the Court finds that enforcement of the noncompetition agreement is necessary and appropriate here.");  *Mickey's Linen v. Fischer*, 17 C 2154, 2017 WL 3970593, at *12 (N.D. Ill. Sept. 8, 2017) (where the Court applies the inevitable disclosure doctrine <u>under Illinois law</u> to enjoin competition <u>in conjunction with an otherwise enforceable non-compete agreement</u>:  "In Illinois, such 'threatened misappropriation' may be addressed under the "inevitable disclosure" doctrine, whereby "a plaintiff may prove trade secret misappropriation by demonstrating that defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets.");  *Fres-co Sys. USA, Inc. v. Hawkins*, 690 Fed. Appx. 72, 74–75 (3d Cir. 2017) (discussing the

---

[11]     Rec. Doc. 45 at p. 6, no. 3 (stating that "Courts across the country have found that the DTSA (as opposed to state trade secret claims) recognizes inevitable disclosure as a basis to enjoin a departing employee").

statutory definitions of trade secrets under "both the Pennsylvania Uniform Trade Secret Act and the [DTSA]" with absolutely no mention of the inevitable disclosure doctrine).

There is absolutely no discussion in any of these cases of the DTSA being an independent basis for application of the inevitable disclosure doctrine and preemption of laws in states like Louisiana that have rejected the doctrine.  Plaintiffs' suggestion to the contrary is directly inconsistent with the express terms of the DTSA which provide that it does **not** preempt "any other provision of law,"[12] or allow a plaintiff to obtain an injunction that would "prevent a person from entering into an employment relationship" based "**merely on the information the person knows,**" which is exactly what Plaintiffs are trying to do in this case – prevent Bowman from working for FRS because of the experience and knowledge in his head.[13]

Louisiana law does **not** allow an employer to use the inevitable disclosure doctrine to transform a confidentiality agreement into a valid non-compete agreement. For these reasons, the Court should partially dissolve the TRO to eliminate paragraphs A, C, and D, as a matter of law.

3. **Plaintiffs cannot circumvent the fact that they were required to provide Bowman with notice of the TRO before going to the Court.**

Plaintiffs' four pages of excuses[14] for not even attempting to provide Bowman with notice that they were going to Court to ask for the TRO should be ignored by the Court, as should their accusation that Bowman is somehow suggesting that the Court did something wrong.  To be clear, Rule 65 and this Court's Local Rule 65.1 required Plaintiffs, **not the Court**, to provide "actual notice" of their intent to seek a TRO against Bowman, which Plaintiffs inexcusably failed to do, despite being in contact with counsel for Bowman's employer for more than a week

---

[12]    18 USC § 1836(b)(2)(f) ("[n]othing in the amendments made by [the Act] shall be construed to… pre-empt  any other provision of law.").

[13]    *Id.*at sec. 2(f) (emphasis added).

before seeking the TRO.  The rules also required Plaintiffs to file a written certification of their attempts to provide notice to Bowman, which Plaintiffs failed to do.  Plaintiffs failure to abide by the notice requirements Rule 65 and Local Rule 65.1 (which exacerbates the legally invalid relief they obtained in paragraphs A, C, and D of the TRO) renders Section B of the TRO invalid, as well.

For all of the foregoing reasons, Bowman respectfully requests the Court to dissolve the TRO that Plaintiffs obtained without notice and based on false representations about the evidence and misleading arguments about the law.

Respectfully submitted,

/s/*Kindall C. James*
Thomas J. McGoey II (La. Bar No. 18330)
Kindall C. James (La. Bar No. 31203)
Alexander J. Baynham (Bar #36369)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108

**ATTORNEYS FOR DEFENDANT**

---

[14]    Plaintiffs' complain that Bowman "turned off his phone numbers and refused communications;" however, Plaintiffs fail to acknowledge that it was Plaintiffs who cut off the service to the phone number at which they were trying to reach him.  Rec. Doc. 45 at p. 3.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing pleading has been served upon all counsel of record by placing same in the United States mail, properly addressed and postage prepaid, and/or through the Court's electronic filing system, on this 24th day of July, 2018.

*/s/ Kindall C. James*