# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **JJ PLANK COMPANY, LLC, AND XERIUM TECHNOLOGIES, INC.** | **CIVIL ACTION NO. 18-0798** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **GARY BOWMAN** | **MAG. JUDGE PEREZ-MONTES** |

# RULING

Pending before the Court is Defendant Gary Bowman's ("Bowman") Expedited Motion to Dissolve or, Alternatively, to Partially Dissolve the June 15, 2018 Temporary Restraining Order [Doc. No. 19]. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

## I.    FACTS AND PROCEDURAL BACKGROUND

On June 15, 2018, based on the factual allegations contained in Plaintiffs JJ Plank Company, LLC, and Xerium Technologies, Inc.'s (collectively "Xerium") verified Complaint for Temporary and Permanent Injunctive and Other Relief [Doc. No. 1] and Motion and Memorandum of Law in Support of Motion for Temporary Restraining Order and Preliminary Injunction [Doc. No. 4], the Court found that Xerium satisfied the requirements of Federal Rule of Civil Procedure 65(b). Therefore, the Court issued a Temporary Restraining Order ("TRO") [Doc. No. 6], which was set to expire at midnight on June 29, 2018, absent other order of the Court.

On June 25, 2018, the Court conducted a telephone conference with counsel for the

parties. During that conference, the Court continued the preliminary injunction hearing to July 12, 2018, and, by agreement of counsel, extended the TRO, pending further motion practice.

On July 3, 2018, the Court held another telephone conference with counsel and re-set the preliminary injunction hearing to July 26, 2018. [Doc. No. 17]. The TRO was again continued by agreement of counsel.

On July 6, 2018, Bowman filed the instant Expedited Motion to Dissolve or, Alternatively to Partially Dissolve the June 15, 2018 Temporary Restraining Order [Doc. No. 19]. Bowman contends that the entire TRO should be dissolved because of Plaintiffs' failure to provide notice prior to issuance under Rule 65(b)(1) and Local Rule 65.1. Alternatively, Bowman contends that the Court should strike paragraphs A, C, and D of the TRO as a matter of law because his non-competition agreement is not enforceable, and the allegations that his current employment could result in disclosure of Xerium's trade secrets are not sufficient to support these paragraphs of the TRO. He further moves for expedited consideration under Rule 65(b)(4). Bowman does not believe a hearing is necessary, but asks for prompt resolution of the motion.

The same day, the Court issued a Minute Entry [Doc. No. 21] setting a briefing schedule on the motion. The Court ordered Xerium to file an opposition memorandum by July 18, 2018, and Bowman to file a reply memorandum by July 24, 2018.

On July 11, 2018, Bowman filed a motion to further expedite consideration of its Motion to Dissolve or Partially Dissolve the TRO. [Doc. No. 24]. On July 12, 2018, Xerium filed an opposition memorandum [Doc. No. 25] to the motion. The same day, Bowman filed a reply memorandum [Doc. No. 26]. The Court denied the motion to further expedite, finding that the

"briefing schedule previously set complies with Rule 65(b)(4) and will allow . . . the Court to decide the pending motion as promptly as justice requires." [Doc. No. 28]. The Court noted its "intent . . . to decide the Motion to Dissolve prior to the hearing on the motion for preliminary injunction." *Id.*

On July 19, 2018, Xerium filed a memorandum in opposition to the instant motion. [Doc. No. 45].

On July 24, 2018, Bowman filed a reply memorandum in support of the instant motion. [Doc. No. 48].

The Court is now prepared to rule.

## II. LAW AND ANALYSIS

Under Rule 65(b)(4), the party against whom a TRO has issued can move to dissolve or modify the injunction, upon notice to the party who obtained the order. The Court then hears and decides the motion "as promptly as justice requires." *Id.*

In this case, the Court indicated that it would decide the TRO issue prior to the preliminary injunction hearing scheduled for Thursday, July 26, 2018. The Court now considers each of Bowman's arguments in turn.

### A. Notice Provisions of Rule 65 and Local Rule 65.1

Bowman first argues that the Court should dissolve the TRO in its entirety because of Xerium's failure to comply with the notice provisions of Rule 65 and Local Rule 65.1. Specifically, Bowman contends that Xerium could and should have given him notice of its intent to seek a TRO, so that it could be heard prior to the Court's issuance of the TRO. Xerium responds that the Court properly issued the TRO on an emergency basis relying on the verified

3

complaint and facts therein.

Rule 65(b) provides that the Court "may issue a [TRO] without written or oral notice to the adverse party or its attorney only if . . . specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and . . . the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Further, Rule 65.1 provides that a motion for a TRO shall be accompanied by a certificate of the applicant's attorney, or by an affidavit, or by other proof satisfactory to the court that actual notice has been given the adverse party or his attorney or detailing the efforts to give notice. However, "in an emergency," the Court can consider an "ex parte application" for a TRO. *Id.*

In this case, the Court was presented with facts in the verified Complaint and the motion for TRO indicating that Bowman had taken and relied upon trade secrets; that Xerium had attempted to communicate with him, but he had turned off his telephone; that Xerium had served him with a cease and desist letter, which he ignored; and that Voith, Bowman's employer was set to begin operations of its spreader roll business, allegedly using the trade secrets very shortly. It was and is the Court's view that such facts were sufficient to indicate exigent circumstances and to issue the TRO immediately.

Further, contrary to Bowman's contentions, even after ten (10) days' notice, during the June 25, 2018 telephone conference with this Court, counsel consented to an extension of the TRO, rather than argue that Louisiana law prohibited the relief sought.[1] [Doc. No. 14]. During a second conference on July 3, 2018, Bowman again agreed to an extension of the TRO. [Doc.

---

[1] Bowman argues that "[i]f Plaintiffs had provided [him] the required notice, this Court would have been timely notified of Louisiana law prohibiting the relief Plaintiffs sought and received." [Doc. No. 19, p. 6].

No. 17]. While Bowman reserved his right to file a motion such as this one, he certainly did not move the Court for relief from the TRO at any time prior to July 6, 2018, when the instant motion was filed, twenty-one (21) days after its issuance and service on him.

Under these circumstances, Bowman's motion is DENIED to the extent that it seeks complete dissolution of the TRO based on lack of notice.

### B. Validity of (A), (C), and (D) of TRO

Bowman further moves the Court to partially dissolve the TRO by striking paragraphs (A), (C), and (D) because they are invalid as a matter of law. Bowman argues that the non-competition portion of his New Hire Agreement is unenforceable under La. Rev. Stat. § 23:921, Xerium's trade secrets claims do not create a *de facto* non-competition or non-solicitation agreement, and Louisiana law does not permit Bowman to be enjoined from working in the absence of an enforceable non-competition or non-solicitation agreement.

Xerium responds that it did not and does not seek to obtain injunctive relief on the basis of the non-competition provisions of Bowman's New Hire Agreement. Rather, it relies on the confidentiality provision of the New Hire Agreement and the protection of trade secrets under the Louisiana Uniform Trade Secret Act ("LUTSA"), LA. REV. STAT. 51:1431, *et seq*., and the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. Xerium notes that it relies on Section 2 of the New Hire Agreement which is directed towards "prohibiting competition by Bowman as to those products . . . actually manufactured and sold by Xerium" and about which Bowman "received confidential information and trade secrets," but that it has never sought a "'blanket prohibition of Bowman's employment by a competitor.'" [Doc. No. 45, p. 5 (quoting Doc. No. 4, pp. 12-13)].

Under Rule 65, a TRO may issue only if the movant has shown (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury absent an injunction, (3) that the threatened injury would exceed any harm that would flow from the injunction, and (4) that the injunction would not undermine the public interest. *See ICEE Distributors, Inc. v. J & J Snack Foods Corp.*, 325 F.3d 586, 597 n. 34 (5th Cir. 2003). In the instant motion, Bowman's arguments address the likelihood of success on the merit.

As Xerium concedes, it is not seeking relief under the non-competition provision of the New Hire Agreement. Therefore, the Court addresses whether parts (A), (C), and (D) of the TRO are properly supported based on alleged violations of the confidentiality provision of the New Hire Agreement, the LUTSA, and the DTSA. Under LUTSA, a plaintiff may obtain injunctive relief against "[a]ctual or threatened misappropriation" of a trade secret. *See* LA. REV. STAT. 15:1432 (A). The LUTSA provides the definition of a trade secret:

> (4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and
>
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

LA. REV. STAT. 51:1431(4). Whether something constitutes a trade secret is a question of fact. *Wyatt v. PO2, Inc.*, 26,675 (La. App. 2d Cir. 3/1/95), 651 So.2d 359. "The threshold inquiry is whether any legally protectable information exists." *SDT Industries, Inc. v. Leeper*, 34,655 (La. App. 2 Cir. 6/22/01), 793 So.2d 327, 331. However, courts have recognized that customer lists may constitute trade secrets. *See Pontchartrain Med. Labs., Inc. v. Roche Biomedical Labs,*

6

*Inc.*, 677 So.2d 1086, 1090 (La. App. 1 Cir. 1996); *Wyatt v. P02, Inc.*, 651 So.2d 359 (La. App. 2d Cir. 1995). The LUTSA further defines "misappropriation" as, in pertinent part, "disclosure or use of a trade secret of another without express or implied consent by a person who . . . "at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . . or . . . before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake." LA. REV. STAT. § 51:1431(2).

Similarly, under the DTSA, "a court may . . . grant an injunction . . . to prevent actual or threatened misappropriation . . . on such terms as the court deems reasonable, provided the order does not . . . prevent a person from entering into such an employment relationship, and that conditions placed on such employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows." 18 U.S.C. § 1836(b)(3)(A). "[T]he definitional sections of the DTSA and [the LUTSA] are very similar." *Source Prod. & Equip. Co. v. Schehr*, No. CV 16-17528, 2017 WL 3721543, at *2 (E.D. La. Aug. 29, 2017) (Comparing 18 U.S.C. §§ 1836, 1839, with LUTSA § 1). Thus, as the Eastern District has recognized, "existing state law on trade secrets informs the Court's application of the DTSA." *Id.*

Finally, under the New Hire Agreement signed by Bowman, he agreed:

All Confidential Information is imparted to me in a relationship of confidence. During my employment and thereafter, I will not copy, reproduce, use, disclose or discuss in any manner, in whole or in part, any Confidential Information of the Companies or the Customers unless (1) necessary for me to carry out my job; (2) necessary for employees or other agents of the Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Companies or the

7

> Customers, as applicable.
>
> . . .
>
> Any violation of this Agreement will cause irreparable damage to the Companies or any of them. Therefore, the Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available.

[Doc. No. 1-2, ¶¶ 1, 8]. The New Hire Agreement defined confidential information to include pricing, marketing plans, and customers and employees of Xerium and its customers. *Id.* at ¶ 1.

In this case, in sections (A), (C), and (D), Xerium sought and obtained injunctive relief to prevent Bowman, respectively, from (A) working for his current employer with regard to spreader rolls; (C) soliciting, recruiting, or communicating regarding spreader rolls with Xerium employees, contractors, vendors, or customers; and (D) soliciting, selling, or communicating with customer or prospective customers of Xerium with whom he had contact during his employment with Xerium. After reviewing the law, arguments, and documentary evidence in this case, the Court finds that Bowman's motion should be GRANTED IN PART and DENIED IN PART.

First, the Court finds that the motion should be GRANTED as to part (A) of the TRO. It is clear that Xerium could not and does not seek to enforce the non-competition portion of Bowman's New Hire Agreement. As Bowman points out, Xerium cannot use its trade secrets and breach of confidentiality clause claims under the LUTSA, DTSA, and the New Hire Agreement to effectively prevent him from competing as an employee of Voith. An injunction should be narrowly tailored to provide relief to the plaintiff without unduly burdening the defendant. In this case, the other provisions of the TRO serve to protect Xerium's interests

without preventing Bowman's continued employment. Therefore, the Court hereby STRIKES part (A) of the TRO.

However, the motion is DENIED as to remaining contested parts of the TRO. The parties agree that non-solicitation (as well as confidentiality) clauses are not covered by LA. REV. STAT. § 23:921. *See Smith, Barney, Harris Upham & Co. v. Robinson*, 12 F.3d 515, 519 (5th Cir. 1994). The Court finds further that, under the provisions of LUTSA, DTSA, and the New Hire Agreement, Xerium properly obtained temporary injunctive relief to prevent the threatened disclosure of its trades secrets and confidential information. While Bowman contends that the evidence at the preliminary injunction hearing will not support Xerium's claims, the Court will not pre-judge the request for preliminary injunctive relief. The Court decides only that, as to the TRO, Bowman has failed to show that parts (C) and (D) should be dissolved.

### C.     Attorney's Fees

Finally, Bowman seeks attorney's fees under Louisiana Civil Code article 3608, arguing that it is substantive for purposes of the *Erie* doctrine, and that it provides for attorney's fees when a TRO has wrongfully issued. Bowman relies on an Eastern District of Louisiana case, *Smoothie King Franchises, Inc. v. Southside Smoothie & Nutrition Ctr., Inc.*, No. CIV. A. 11-2002, 2012 WL 630010, at *8 (E.D. La. Feb. 27, 2012), in which the court held that Article 3608 "creates a cause of action for damages" and thus "it is clearly substantive for *Erie* purposes." Xerium responds that the *Smoothie King* decision is inapposite because it was decided on a motion to dismiss, not with regard to the issuance of an injunction, and the *Erie* doctrine is inapplicable because this Court has federal question jurisdiction to the Defendant Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.

Regardless whether the Court has the authority to award attorney's fees under Article 3608, the Court declines to do so. The Court has denied Bowman's motion to dissolve the TRO in its entirety, which appears to be the basis of its request for attorney's fees. Bowman has obtained only a portion of the relief sought, and the Court finds that attorney's fees should not be awarded under these circumstances. Accordingly, Bowman's motion is DENIED in this regard.

### III.  CONCLUSION

For the foregoing reasons, the Expedited Motion to Dissolve or, Alternatively, to Partially Dissolve the June 15, 2018 Temporary Restraining Order [Doc. No. 24] is GRANTED IN PART and DENIED IN PART. To the extent that Bowman moves the Court for expedited consideration, the motion was GRANTED. Further, to the extent that Bowman moves the Court to dissolve Part A of the TRO, the motion is GRANTED, and that part is DISSOLVED. The motion is otherwise DENIED.

MONROE, LOUISIANA, this 25th day of July, 2018.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE