# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| JJ PLANK COMPANY, LLC, AND XERIUM TECHNOLOGIES, INC. | CIVIL ACTION NO. 18-0798 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| GARY BOWMAN | MAG. JUDGE PEREZ-MONTES |

## RULING

Pending before the Court is Plaintiffs JJ Plank Company, LLC, and Xerium Technologies, Inc.'s (collectively "Xerium") motion for preliminary injunction [Doc. No. 4]. A hearing was held on the motion on July 26-27, 2018, and the parties submitted post-hearing briefs [Doc. Nos. 72 & 75]. Xerium has also filed a Motion to Strike [Doc. No. 76] with regard to Defendant Gary Bowman's ("Bowman") briefing.

For the following reasons, the Motion to Strike is GRANTED, and the Motion for Preliminary Injunction is DENIED.

### I. FACTS AND PROCEDURAL BACKGROUND

Bowman, who has a high school education, has worked in the spreader roll repair business since 1990. That year, he became an employee of Spencer Johnson, a division of JJ Plank Corporation, in West Monroe, Louisiana. He began his employment as a mechanic, repairing and refurbishing industrial rolls, including spreader rolls, and, by the end of his employment, he was the plant manager, managing a crew of approximately 6 mechanics.

A spreader roll is an industrial roll comprised of a bowed steel axle which is stationary

and fitted with a multi-piece slotted steel spool with bearings inserted that allows rotation of the spool around the bowed axle. Spreader rolls are commonly used in the papermaking industry, where the bow in the roll removes wrinkles and enables even tension to be experienced by both the center and the edges of an endless web of paper passing over the roll.

In May 2016, Xerium bought the assets of JJ Plank Corporation through JJ Plank Acquisitions, LLC. JJ Plank Corporation terminated all of its employees, including Bowman. JJ Plank Acquisitions, LLC, which later became Plank, LLC, offered Bowman employment at will with the new company for $80,000.00 per year.

As a condition of his hiring by the new company, Bowman signed a New Hire Agreement, the standard form used by Xerium across the country. The New Hire Agreement contained restrictive covenants, including non-compete, non-solicitation, and confidentiality provisions.

Bowman began working for Plank, LLC, at the same West Monroe location. However, within a couple of months, Bowman and the other West Monroe employees were reassigned to the Xerium-owned Stowe Woodward facility in Ruston, Louisiana.

In 2018, Voith Paper Fabric & Roll Systems, Inc. ("Voith") offered Bowman employment in West Monroe at a salary increase of approximately $20,000. Bowman accepted that position and submitted his resignation letter to Xerium on May 4, 2018, with an effective termination date of May 16, 2018.

On May 22, 2018, Bowman began working for Voith. Voith, an established international company, previously has been a customer of Xerium, but is now establishing its own spreader roll service.

On June 15, 2018, Xerium filed a verified Complaint for Temporary and Permanent Injunctive and Other Relief [Doc. No. 1] in this Court. On that same date, based on the factual allegations contained in the verified Complaint and in the Motion and Memorandum of Law in Support of Motion for Temporary Restraining Order and Preliminary Injunction [Doc. No. 4], the Court found that Xerium satisfied the requirements of Federal Rule of Civil Procedure 65(b). Therefore, the Court issued a Temporary Restraining Order ("TRO") [Doc. No. 6], which was set to expire at midnight on June 29, 2018, absent other order of the Court. The TRO provided, in pertinent part, as follows:

IT IS HEREBY ORDERED that Xerium's Motion for a Temporary Restraining Order [Doc. No. 4] is GRANTED, and Defendant Gary Bowman is hereby RESTRAINED AND ENJOINED FROM:

A. working with or for Voith in relation to spreader rolls;

B. possessing, using or disclosing Xerium's trade secrets and other confidential information and for him to return all of the same within 24 hours of service of this Order;

C. soliciting, recruiting or communicating regarding spreader rolls with any Xerium employee, contractor, vendor or customer; and

D. soliciting, selling or communicating with any customer or prospective customer of Plaintiffs or its affiliates with whom Bowman had contact during his employment with Xerium.

IT IS FURTHER ORDERED that this Temporary Restraining Order extends to any person in active concert or participation with Gary Bowman who receives actual notice of this Order by personal service or otherwise.

. . .

[Doc. No. 6].

On June 25, 2018, the Court conducted a telephone conference with counsel for the parties. During that conference, the Court continued the preliminary injunction hearing to July

12, 2018, and, by agreement of counsel, extended the TRO, pending further motion practice.

On July 3, 2018, the Court held another telephone conference with counsel and re-set the preliminary injunction hearing to July 26, 2018. [Doc. No. 17]. The TRO was again continued by agreement of counsel until the time of the hearing.

On July 6, 2018, Bowman filed an Expedited Motion to Dissolve or, Alternatively to Partially Dissolve the June 15, 2018 Temporary Restraining Order [Doc. No. 19]. After briefing was complete, on July 25, 2018, the Court granted the motion in part and denied it in part. The Court dissolved Part A of the TRO, but otherwise left it in place. [Doc. No. 53].

On July 26, 2018, a hearing commenced on Xerium's Motion for Preliminary Injunction. Prior to the hearing, Bowman filed a Motion in Limine [Doc. No. 56] in which he moved to exclude a report and spreadsheets from a computer forensic consultant as untimely provided. The motion was discussed in chambers, and, in open court, the Court granted the motion.

The hearing held over two days, concluding on July 27, 2018. Xerium confirmed that it seeks a preliminary injunction with the same provisions as those in the TRO, except that as paragraph (A), Xerium seeks to prohibit Bowman from working with or for Voith in relation to Spencer Johnson, Mount Hope or Xerium spreader rolls. To support the motion, Xerium presented testimony from John Jones, Mark Mortenson, and David Pretty, all of whom are employees of Xerium. Bowman testified on his own behalf.

Following the hearing, the parties timely filed supplemental briefs. [Doc. Nos. 72 & 75]. Xerium also filed the pending Motion to Strike [Doc. No. 76], which is also fully briefed. *See* [Doc. Nos. 78 & 81].

The Court is now prepared to rule on the Motions to Strike and for Preliminary

Injunction.

## II. LAW AND ANALYSIS

### A. Motion to Strike

Prior to addressing Xerium's Motion for Preliminary Injunction, the Court must address its Motion to Strike. Xerium moves to strike footnotes 5, 56, 57, and 58 of Bowman's Opposition to the Application for Preliminary Injunction [Doc. No. 75]. Bowman seeks to introduce the following:

> Footnote 5: *See Kluber Lubrication*, *The element that rolls the bearing – Tips and advice for the lubrication of rolling bearings*, at pp. 5 and 23-33 (providing lubrication selection criteria to assist customers "in selecting the correct grease **via a few simple steps**," "explaining that the following parameters are usually analyzed or calculated: operating temperature, base oil viscosity, speed factor, load ration C," and providing charts similar to Exh. 37 showing optimal greases based on temperature and speed factors) (emphasis added) (available at https://www.klueber.com/ecomaXL/files/Competence_brochure_rolling_bearing%5B1%5D.pdf).

> Footnote 56: Solutions for Diversified Production Processes. Specialty lubricants for the pulp and paper industry, at pp. 10-11 (available at https://www.klueber.com/ecomaXL/files/Speciality-lubricants-for-the-pulp-and-paper-industry.pdf) (advertising various Kluber greases for use on bearings and other parts utilized in paper industry); *see also* NTN Global Website, listing products for the Paper Manufacturing Machinery, at https://www.ntnglobal.com/en/products/papermaking_machine.html).


> Footnote 57: NTN Products Catalogue, Section 11 Lubrication, at p. 3 https://www.ntnglobal.com/en/products/papermaking_machine.html) (listing various Kluber greases).

> Footnote 58: Valmet Technical Paper Series – Roll Modernizations: Deflections Compensated and Other Rolls, at p. 11 (available at https://www.valmet.com/globalassets/media/downloads/white-papers/roll-services/wpr_rollmoddeflcomp.pdf) ("**Valmet uses high quality components** in those areas where cost equals runnability and reliability, **such as**: self-aligning ball bearings, vulcanized couplings, Devoe coating, stainless hardware at the end lube, **Kluber Lube high temperature grease.** Plus, Valmet has the ability

5

to regroove rolls on the lathe, to OEM specification.")
[Doc. No. 75, pp. 3 n.5 and 22 nn. 56-58].

Xerium moves the Court to strike the footnotes which contain evidence that Bowman neither produced in discovery, nor introduced at the preliminary injunction hearing. Each of the footnotes provides an internet link third-party websites containing documents or other content. Xerium argues that the purported evidence in the footnotes lacks foundation because it was not authenticated by any witness at the hearing. Given this lack of foundation, Xerium argues further that the extraneous evidence constitutes inadmissible hearsay. Finally, Xerium argues that the extraneous evidence should be excluded as irrelevant.

Bowman responds that the Court can take judicial notice of the information on the corporate websites of NTN, Kluber, and Valmet under FED. R. EVID. 201(b)(1)–(2), which provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it. . .can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Judicial notice also serves as a proper means of authenticating the information. Bowman responds further that the information on the websites is not hearsay because it is not offered for the truth of the matter asserted, but for the fact that such information is publicly available. Finally, Bowman contends that he was not required to list these websites in response to the discovery request relied upon by Xerium.

Xerium replies that Rule 201(b) does not permit judicial notice of the footnotes because Bowman is attempting to use information from the websites to support his argument that the information, in the hands of a person of skill in the art of manufacturing and refurbishing of spreader rolls, could be used to ascertain Xerium's claimed trade secret. Further, Xerium argues

6

that there is no evidence linking the internet information to any of the trade secrets claimed. If any of the websites provided support for the argument that the alleged trade secrets were publicly known, Xerium argues that Bowman should have provided these materials in the course of discovery or at least provided the information at the hearing.

After considering the evidence and argument of counsel, the Court GRANTS the Motion to Strike. While the Court can take judicial notice of certain facts under Rule 201(b),[1] in equity and fairness, the Court finds that this evidence should have been produced no later than the hearing, not as part of the post-hearing briefing. Therefore, the Court will not consider these footnotes in ruling on the pending Motion for Preliminary Injunction.[2]

### B. Motion for Preliminary Injunction

Having resolved the Motion to Strike, the Court now turns to Xerium's Motion for Preliminary Injunction. There are four traditional criteria a party moving for a preliminary injunction must satisfy: "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3)

---

[1]Rule 201(b) has been cited as a basis for taking judicial notice of information contained on websites. *See, e.g., Ball v. LeBlanc*, 792 F.3d 584, 591 (5th Cir. 2015) (approving the district court's taking of judicial notice of the website materials on the National Weather Service's website relating to the correlation between heat and death in adjudicating a claim that involved atmospheric heat at the prison).

[2]The Court recognizes that the Fifth Circuit permits less formal procedures at the preliminary injunction stage, including the consideration of evidence such as hearsay. *See Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993). The Court does not rely on Xerium's arguments with regard to the nature and type of the evidence. Instead, it is the Court's concern that each party had fair notice at least by the time of the hearing of the arguments and evidence relied upon by the opposing party. The Court does not bar Bowman from any subsequent reliance on these exhibits and/or information, but only at this stage of the litigation. Xerium is now on fair notice of Bowman's intent to present and rely on this evidence.

that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Canal Auth. Of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974); *see also Glossip v. Gross*, 135 S. Ct. 2726, 2736 (2015) ("'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'") (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)), reh'g denied, 136 S. Ct. 20 (2015)). Because a preliminary injunction is "an extraordinary remedy," it "should only be granted if the movant has "clearly carried the burden of persuasion on all four . . . prerequisites." *Mississippi Power & Light v. United Gas Pipe Line Co.*, 760 F.2d 618 (5th Cir. 1985). If the movant fails to meet its burden as to any one of the four prerequisites, the injunction may not issue. *See Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

Ultimately, after applying these standards, the Court finds that Xerium has not met its burden of convincing the Court that the extraordinary remedy of a preliminary injunction is appropriate in this case.

    **1.  Substantial Likelihood of Success on the Merits in this Case**

To meet the burden with regard to the criteria of substantial likelihood of success, "the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment." *Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013); *see also Janvey v. Alguire*, 647 F.3d 585, 596 (5th Cir. 2011) (citing CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, 11a FEDERAL PRACTICE &

PROCEDURE § 2948.3 (2d ed. 1995)).

In this case, Xerium raises claims for Bowman's alleged violations of the confidentiality clause of his New Hire Agreement, for violations of the Louisiana Uniform Trade Secret Act ("LUTSA"), LA. REV. STAT. 51:1431, *et seq.*, and for violations of the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836.

### a. Non-Solicitation under the New Hire Agreement

Xerium contends that the Court should grant it injunctive relief based on the New Hire Agreement, pursuant to which Bowman agreed as follows:

> 1. **Confidential Information:** During the course of my employment by the Companies, I may become aware of Confidential Information. Confidential Information consists of all information pertaining to the business of any of the Companies and the Customers, that is not generally known to the public at the time made known to me. It includes but is not limited to trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customer and employees of the Companies or the Customer; confidential information about other companies and their products; and information expressly designated as "Highly Confidential", "Confidential", "internal", or any label that denotes that the information is proprietary or confidential. All Confidential Information is imparted to me in a relationship of confidence. During my employment and thereafter, I will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information of the Companies or the Customers unless (1) necessary for me to carry out my job; (2) necessary for employees or other agents of the Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Companies or the Customers, as applicable. I also will not retain any copies, notes, or excerpts of Confidential Information upon termination of my employment. I will promptly notify the Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. I will not open, read, or in any way access Confidential information without authorization.
>
> 2. **Covenant Not to Compete**. During the term of my employment hereunder and for two (2) years thereafter, (in the case of an Employee

who has worked for the Company or any of its affiliates for less than a year, the period of restriction shall not exceed the number of months employed, but shall not in any event equal at least six months), I shall: (1) not compete in, do any work in or cause any benefit or effect in any geographic area in which Company is actively engaged in business, during my employment by the Company, directed toward or involving the manufacture or sale of any product substantially resembling or competing with any product which, during the term of this agreement, Company manufactures, sells, has under development, or has had disclosed to it, as to which I have obtained Confidential Information or trade secrets, or any products of Xerium Technologies, Inc. or any of their divisions or subsidiaries of which I have obtained Confidential Information or trade secrets; and (2) not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, between Xerium Technologies, Inc. or any of their subsidiaries and divisions, and any customer, supplier or employee of them.  For this same period, I also will not directly or indirectly, on my own behalf or on the behalf of anyone else or any company, sell any product or service to any customer or prospective customer with whom I had personal contact during the course of my employment by the Companies.  During this same period, I also will not directly or indirectly, on my behalf or on the behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of the Companies or Customers to leave his/her employment.

. . .

Any violation of this Agreement will cause irreparable damage to the Companies or any of them. Therefore, the Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available.

[Doc. No. 1-2, ¶¶ 1, 2 & 8].

Louisiana law has a strong public policy against the restraint of trade, including non-competition and non-solicitation agreements.  *See SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So.2d 294, 298 (La. 2001).  Under Louisiana Revised Statute 23:921(A)(1), "[e]very contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void."  Subsection (C) provides, in pertinent part:

> Any person,  . . . who is employed as an  . . . employee may agree with his

> employer to refrain from carrying on or engaging in a business similar to that of the employer **and/or from soliciting customers of the employer** within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. . . .

LA. REV. STAT. § 23:921(C) (emphasis added).

> In short, "a valid non-competition agreement may limit competition *only* in a business similar to that of the employer, in a specified geographic area, for up to two years from termination of employment." *Parker v. Surface Works, Inc.*, No. 2015-1583, 2016 WL 5110048, at *3 (La. Ct. App. 1st Cir. Sept. 16, 2016) (emphasis in original); *see also Affordable Roofing, Siding, and Gutters, Inc. v. Artigues*, No. 16-16872, 2017 WL 713693, at *3 (E.D. La. Feb. 23, 2017) (Africk, J.) ("Non-solicitation of customers provisions in Louisiana are subject to the same restrictions as non-compete provisions.").

*O'Sullivan v. Sunil Gupta, M.D., LLC*, No. CV 17-609, 2017 WL 3438349, at *2 (E.D. La. Aug. 10, 2017); *see also Ferrellgas, L.P. v. McConathy*, Civil Action No. 1:10-cv-00178, 2010 WL 1010831, at *3 (W.D. La. March 15, 2010) ("While non-competition clauses are theoretically distinct from non-competition clauses, they must still independently satisfy the requirements of La. R.S. § 23:921(C).").

Xerium does not seek to enforce the covenant not to compete clause of the New Hire Agreement to prevent Bowman from working for a competitor, but argues that the above-cited provisions support a preliminary injunction to prohibit Bowman from (1) working for Voith with regard to Spencer Johnson, Mount Hope or Xerium spreader rolls; (2) from "soliciting, recruiting or communicating regarding spreader rolls with any Xerium . . . contractor, vendor or customer; and (3) from "soliciting, selling or communicating with any customer or prospective customer of Plaintiffs or its affiliates with whom Bowman had contact during his employment with Xerium." [Doc. No. 1, p. 40].

11

However, the non-compete and non-solicitation provisions in Section 2 of the New Hire Agreement are not compliant with LA. REV. STAT. 23:921(C). Therefore, to the extent that Xerium relies upon these provisions to support its request to enjoin Bowman from working for a competitor (or soon-to-be competitor)[3] or from soliciting customers, vendors, or contractors, the Court finds that Xerium has not shown a likelihood of success on the merits because these provisions are improper restraints on trade. Xerium cannot circumvent the statute by instead relying on the confidentiality provisions in Section 1 of the New Hire Agreement.

The covenant not to compete also prohibits Bowman from soliciting Xerium employees for his new employer, Voith. The parties agree that La. Rev. Stat. 23:921(C) does not prevent enforcement of a clause or provision prohibiting the solicitation of employees. *See Smith, Barney, Harris Upham & Co. v. Robinson*, 12 F.3d 515, 516 (5th Cir. 1994) ("We find that La.R.S. 23:921 does not apply to the instant agreement not to solicit employees of the former employer."); *see also CDI Corp. v. Hough*, 2008-0218 (La. App. 1 Cir. 3/27/09), 9 So. 3d 282, 292 (A "non-solicitation of employees clause in the agreement . . . does not prevent Mr. Hough from exercising his trade, profession, or business[,]" but "merely restricts those whom he can recruit for his new company"; "Thus, the agreement is not governed by La. R.S. 23:921."). Thus, it is possible for this provision to be enforced. However, the Court heard no evidence whatsoever to support any claim that Bowman is soliciting or intends to solicit Xerium's

---

[3]To the extent that Xerium has argued that Voith is not a competitor, the Court rejects this argument and finds it to be a distinction without a difference. *See Innovative Manpower Solutions, LLC v. Ironman Staffing, LLC,* 929 F.Supp.2d 597, 617 (W.D. La. 2013) ("It seems obvious . . . that if it is the strong public policy of the state to limit actual competition, the public policy of the state must be just as strong (or even stronger) prohibiting a limitation on preparing to compete.").

employees. Bowman clearly testified to the contrary and further testified that Voith intends to hire internal candidates for its new spreader roll business. Xerium presented no evidence to dispute his testimony. At least at this juncture, Xerium has not shown a likelihood of success on the merits on this claim either. Therefore, to the extent that Xerium attempts to rely on the covenant not to compete, when read with the confidentiality clause, of the New Hire Agreement to prevent Bowman's employment by Voith as to the designated spreader rolls and to prevent his solicitation of Xerium's customers, vendors, contractors, and employees, Xerium has failed to establish a prima facie case on its likelihood of success on the merits.

### b. Trade Secrets and Confidential Information under the New Hire Agreement and the LUTSA and DTSA

Xerium also contends that the Court should enjoin Bowman to protect its trade secrets and confidential information. In addition to the confidentiality clause of the New Hire Agreement quoted fully above, Xerium relies on the provisions of the LUTSA and the DTSA. Under LUTSA, a plaintiff may obtain injunctive relief against "[a]ctual or threatened misappropriation" of a trade secret. *See* LA. REV. STAT. 15:1432 (A). Whether something constitutes a trade secret is a question of fact. *Wyatt v. PO2, Inc.*, 26,675 (La. App. 2d Cir. 3/1/95), 651 So.2d 359. "The threshold inquiry is whether any legally protectable information exists." *SDT Industries, Inc. v. Leeper*, 34,655 (La. App. 2 Cir. 6/22/01), 793 So.2d 327, 331. The LUTSA defines a trade secret:

> (4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (a) derives independent economic value, actual or potential, from not being

13

> generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and
>
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

LA. REV. STAT. 51:1431(4).

Further, "[t]he burden is on the obligee to establish 'both the existence of a legally protectable secret and a legal basis upon which to predicate relief.'" *Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 483 F. Supp. 2d 521, 533 (E.D. La. 2007) (quoting *Ponchartrain Medical Labs, Inc. v. Roche Boimedical*, No. 95-2260 (La.App. 1 Cir. 6/29/96); 677 So.2d 1086, 1090 (citing *Engineered Mechanical Servs. v. Langlois*, No 83-1384 (La.A pp. 1 Cir. 12/28/84); 464 So.2d 329)). The LUTSA defines "misappropriation" as, in pertinent part, "disclosure or use of a trade secret of another without express or implied consent by a person who . . . "at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . .or . . . before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake." LA. REV. STAT. § 51:1431(2).

Similarly, under the DTSA, "a court may . . . grant an injunction . . . to prevent actual or threatened misappropriation . . . on such terms as the court deems reasonable, provided the order does not . . . prevent a person from entering into such an employment relationship, and that conditions placed on such employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows." 18 U.S.C. § 1836(b)(3)(A). "[T]he definitional sections of the DTSA and [the LUTSA] are very similar."

14

*Source Prod. & Equip. Co. v. Schehr*, No. CV 16-17528, 2017 WL 3721543, at *2 (E.D. La. Aug. 29, 2017) (Comparing 18 U.S.C. §§ 1836, 1839, with LUTSA § 1). Thus, as the Eastern District has recognized, "existing state law on trade secrets informs the Court's application of the DTSA." *Id.*

During the two-day hearing, Xerium presented extensive testimony from its three witnesses and through cross-examination of Bowman as to what it contends are its trade secrets and protected confidential information. Xerium claims that Bowman could not use or disclose the following: (1) plant set up operations; (2) greasing chart and bearing information; (3) improved Best-in-Class processes; (4) critical speed of rolls; (5) roll surveys; (6) spool layouts; (7) material specifications; (8) assembly/disassembly procedures; and (9) pricing and profit margins for customers. [Doc. No. 72, pp. 3-4]. Xerium argues that Bowman "never denied that he is knowledgeable of this information" and that he has "knowledge of procedures [such as grease selection] and did not need to refer to documents to carry out the procedures." *Id.* at p. 4. Therefore, Xerium contends that any argument that Bowman took no documents is a "sleight of hand." *Id.*

Xerium argues further that the threat of misappropriation is "imminent" because Bowman testified that he was in the process of identifying parts suppliers and getting quotes when the TRO issued, and he was taking steps to equip Voith with the capability of repairing and refurbishing Spencer Johnston and Mount Hope spreader rolls, including "sourcing materials, drawings, assembly/disassembly procedures, run-in procedures, testing procedures, and equipment purchase." [Doc. No. 72, p. 18].

Bowman argues, on the other hand, that Xerium admits that it has no evidence that

Bowman has "taken, used, disclosed, or acted through 'improper means' to acquire any" of Xerium's trade secrets or confidential information. [Doc. No. 75, p. 19]. Bowman points to the testimony of Xerium's witnesses, all of whom admit that they have no evidence that Bowman took any documents or files, in hard copy or electronic format, nor that Bowman has disclosed any trade secrets to Voith.

Bowman also addresses specific arguments by Xerium. With regard to Xerium's allegations about his disclosure of its suppliers of bearings and grease, Bowman argues that the identities of these suppliers are not Xerium's trade secrets. With regard to Xerium's allegations about his recommendations to Voith on equipment and the general arrangement of the Voith shop, Bowman again argues that there is no evidence he used trade secrets, the evidence showed that Voith had purchased equipment before he arrived, and he testified that he recommended that the shop be set up differently from Xerium's shop. Finally, Bowman contends that Xerium has no right to seek to enjoin him from using the knowledge and skills he has gained over the years in the spreader roll industry in his new position with Voith.

While the Court acknowledges that Xerium may have raised a *prima facie* case that it has **some** trade-secret protected or confidential information, after hearing all the witness testimony, the Court finds that Xerium has failed to establish that Bowman misappropriated anything at all or that there is a threatened misappropriation of any trade secret or confidential information. To the extent that Xerium contends that Bowman has provided the names of third-party suppliers of grease or bearings to Voith, the Court finds that Xerium has failed to make out a prima facie case that this information is confidential or a trade secret, subject to protection, as this information is readily ascertainable, given that these third parties are in the business of selling grease and

16

bearings.

With regard to Xerium's other allegedly protected information, the Court finds that Xerium has failed to make out a prima facie case of likelihood of success on the merits. While there is no requirement that a trade secret or confidential information be in writing to be protected under the New Hire Agreement, the LUTSA, or the DTSA,[4] there is simply no evidence before the Court at this time that Bowman is doing anything he is not allowed by law to do. He is not subject to an enforceable covenant not to compete; therefore, his employment by Voith, even in a soon-to-be competing business is not a violation of the New Hire Agreement, the LUTSA, or the DTSA. The law permits him to use his memory, experience, skills, even those developed during his former employment, in his new position at Voith. *See Ferrellgas, L.P. v. McConathy*, No. Civ. A. 1:10-CV-00178, 2010 WL 101081, at *8 (W.D. La. Mar. 15, 2010) ("Moreover, the expertise and knowledge acquired by Mr. McConathy is not protected under the LUTSA. Louisiana courts have repeatedly emphasized that '[a] former employee who enters business in competition with his former employer necessarily utilizes the experience he acquired and the skills he developed while in a former employment.'") (quoting *Boncosky Servs., Inc. v. Lampo*, 751 So.2d 278, 287 (La. App. 1st Cir.1999)); *see also Ashland Chemical, Inc. v. Lombardino*, No. 92-2434, 1993 WL 390147, at *4 (E.D. La. Sept. 23, 1993) ("Clearly, a former employee is 'allowed to rely on his memory or general knowledge and skill gained in his former

---

[4]*Restivo*, 483 F. Supp. 2d at 534 (Finding a genuine issue of material fact whether Mr. Restivo breached his employment contract and the LUTSA by improperly using his former employer's patient list that he "remembered"; however, at trial, the former employer would have to prove that the patient list "is the kind [of information] protected by the Act, and there is an agreement prohibiting disclosure or unauthorized use of that information.").

employment' without violating a nondisclosure covenant.") (quoting *NCH Corp. v. Broyles*, 749 F.2d 247, 254 (5th Cir.1985))*, citing in Ferrellgas*, 2010 WL 101081, at *8). The evidence before the Court is that Bowman is doing just that—using his knowledge and skills in his new position to help Voith establish a competing business.[5] Therefore, Xerium has failed to establish the first prerequisite, and it is not entitled to a preliminary injunction.

## 2. Irreparable Harm

Moreover, Xerium has failed to establish that an irreparable injury will occur if the preliminary injunction does not issue.

"A plaintiff seeking a preliminary, as opposed to a permanent injunction must show that the irreparable injury will occur 'during the pendency of the litigation' unless the preliminary injunction issues." *Rimkus Consulting Group, Inc. v. Cammarata*, 255 F.R.D. 417, 433 (S.D. Tex. 2008) (quoting *Justin Inds., Inc. v. Choctaw Secs.,* L.P., 920 F.2d 262, 268 n. 7 (5th Cir. 1990). In order for a harm to be considered irreparable for purposes of issuing a preliminary injunction, monetary damages must be inadequate to redress it.

In this case, Xerium contends that it will suffer irreparable harm if its trade secrets are revealed, but it has failed to prove that its trade secrets have been taken, much less used. At this point, Xerium only speculates that it will lose business to Voith in the future if Bowman has misappropriated trade secrets and confidential information and if Voith uses that information to

---

[5]*Cf. Technical Industries v. Banks*, 419 F. Supp.2d 903 (W.D. La. 2006) (former employee could bring his "wealth of knowledge and experience in the oilfield pipe inspection industry" and the skills he developed, but the former employer was entitled to a preliminary injunction where it presented sufficient evidence that its trademarked technique for processing data collected during a pipe inspection was a trade secret and that it took reasonable efforts to protect that trade secret).

form its competing business. Additionally, if Xerium proves its case against Bowman, Xerium will also have the opportunity to prove any damages it suffers from loss of business to Voith, and there is no evidence that such damages would be difficult to calculate. *See Innovative Manpower Sols., LLC v. Ironman Staffing, LLC*, 929 F. Supp. 2d 597, 620 (W.D. La. 2013) ("Where economic rights are involved, irreparable harm exists 'when the nature of those rights makes establishment of the dollar value of the loss ... especially difficult or speculative.'") (quoting *Allied Mktg. Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 810 (5th Cir. 1989); *Block Corporation v. Nunez,* 2008 WL 1884012, *6 (N.D. Miss. 2008)); *Johnson Controls, Inc. v. Guidry*, 724 F.Supp.2d 612, 620 (W.D. La. 2010) ("Simply arguing that a company is losing customers and goodwill without showing that monetary damages are an inadequate remedy is insufficient to establish irreparable harm."). Because Xerium has failed to show that its trade secrets have been misappropriated or that misappropriation is threatened, or that monetary damages are inadequate to compensate for such threatened misappropriation, Xerium is not entitled to a preliminary injunction.

### III. CONCLUSION

For the foregoing reasons, the Motion to Strike is GRANTED, and the Motion for Preliminary Injunction is DENIED.

MONROE, LOUISIANA, this 7th day of September, 2018.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE